**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| WALTER L. MORGAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Cause No. 1:09-cv-399-SEB-TAB |
| | ) | |
| ANN J. FENNIMORE, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## ENTRY ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

Before the Court is the Defendants' Motion for Summary Judgment (Docket No. 38) and the Plaintiff's Cross-Motion for Summary Judgment (Docket No. 43). These motions are fully briefed, and the Court, being duly advised, now **GRANTS** the Defendants' motion and **DENIES** the Plaintiff's motion for the reasons set forth below.

## I. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c)(2) provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment, the admissible evidence presented by the non-moving party must be believed and all reasonable inferences must be drawn in the non-movant's favor. *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007). Finally, the non-moving party bears

the burden of specifically identifying the relevant evidence of record, and "the court is not required to scour the record in search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001).

The fact that the parties have filed cross-motions for summary judgment does not alter the standard set forth in Federal Rule of Civil Procedure 56(c)(2). When evaluating each side's motion the court simply "'construe[s] all inferences in favor of the party against whom the motion under consideration is made.'" *Metro. Life Ins. Co. v. Johnson*, 297 F.3d 558, 561-62 (7th Cir. 2002) (quoting *Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 692 (7th Cir. 1998)).

## II. BACKGROUND

In 1986, Indiana resident Walter Morgan won $25 million from the Ohio State Lottery. Morgan elected to receive his winnings as annual payments of $1.2 million for twenty years.[1] Morgan was to receive his last payment on April 9, 2005. In 2003, Morgan transferred his remaining lottery payments to a program called Peachtree in exchange for a $1.1 million annuity. Peachtree assumed all income tax responsibilities for the remaining two lottery payments. Accordingly, 2003 was the last tax year that Morgan was responsible for paying taxes on the lottery income.[2]

Beginning in 1990 and continuing until 2007, Ann Fennimore and her accounting firm Fennimore and Associates P.C. (collectively "Fennimore") served as Morgan's Certified Public Accountant ("CPA"). As Morgan's CPA, Fennimore prepared Morgan's federal tax return, as

---

[1] At some point, Morgan and his wife divorced and he gave up fifty percent of his annual lottery payment. Thus, Morgan's annual payment changed from $1.2 million to $625,000.

[2] The income tax return for the 2003 tax year was prepared and filed in April of 2004.

2

well as his Indiana state tax return. However, despite the fact that Morgan received a Form W-2G from the State of Ohio from 1990 until 2003, Fennimore never prepared or filed an Ohio state tax return on Morgan's behalf.

Each year that Fennimore prepared Morgan's tax return, she provided him a separate bill. Morgan understood that he could change accountants at any time and he did not feel compelled to retain Fennimore each year.

In early 2003, Morgan informed Fennimore that he had moved to Washington state. Despite this information, for the 2003 tax year Fennimore prepared a 2004 IT-40 Indiana Full Year Resident Individual Income Tax Return for Morgan.

Then, in July 2008, Morgan received a notice from the Ohio Department of Taxation informing him that he owed $1,792,507 in tax liability, fees, and interest to the State of Ohio. Morgan contacted Fennimore and asked her to determine if a mistake had been made. Morgan sent Fennimore a signed Declaration of Tax Representative, which gave Fennimore the authority to contact the Department of Taxation on his behalf. Ultimately, Morgan contacted an Ohio attorney who helped him settled the tax issue with the Department of Taxation for $250,000.

On April 1, 2009, Morgan filed suit against Fennimore alleging negligence and breach of fiduciary duty. The parties have now filed cross-motions for summary judgment.

### III. DISCUSSION

Before the Court can address the parties' substantive arguments, it is necessary to first determine whether Indiana or Ohio law applies to this dispute. However, "'before entangling itself in messy issues of conflict of laws a court ought to satisfy itself that there actually is a difference between the relevant laws of the different states.'" *Jean v. Dugan*, 20 F.3d 255, 260

(7th Cir. 1994) (quoting *Barron v. Ford Motor Co. of Canada, Ltd.*, 965 F.2d 195, 197 (7th Cir. 1992)). "Where there is no disagreement among the contact states, the law of the forum state applies." *Id*. However, where the choice of laws could affect the outcome of the case, the Court must decide which state's law to apply. This Court applies Indiana choice of law provisions. *See id*. at 260-61.

In the instant case, the choice between Ohio and Indiana law does make a difference. Indiana provides either a one or three year statute of limitations for claims of accountant negligence under the Accountancy Act. *See* IND. CODE 25-2.1-15-2. In contrast, Ohio provides for a four year statute of limitations. *See* OHIO REV. CODE ANN. § 2305.09(D). Thus, there is a difference between Indiana and Ohio law and a choice-of-law analysis using Indiana's choice-of-law rules, *see Jean*, 20 F.3d at 260, is necessary.

Historically, Indiana followed the *lex loci delicti commissi* rule and applied "the substantive law where the tort was committed." *Hubbard Mfg. Co., Inc. v. Greeson*, 515 N.E.2d 1071, 1073 (Ind. 1987). Under this rule, "[t]he tort is said to have been committed in the state where the last event necessary to make an actor liable for the alleged wrong takes place." *Id*. However, in *Hubbard*, the Indiana Supreme Court deviated from this rule. Now Indiana uses "*lex loci* as a starting point" and it governs "unless the state where the tort occurred 'is an insignificant contact.'" *Simon v. United States*, 805 N.E.2d 798, 804 (Ind. 2004) (quoting *Hubbard*, 515 N.E.2d at 1073).

"Thus, in tort cases Indiana choice-of-law analysis now involves multiple inquiries. As a preliminary matter, the court must determine whether the differences between the laws of the states are 'important enough to affect the outcome of the litigation.'" *Simon*, 805 N.E.2d at 805

4

(quoting *Hubbard*, 515 N.E.2d at 1073). "If such a conflict exists, the presumption is that the traditional *lex loci delicti* rule (the place of the wrong) will apply." *Id*. "Under this rule, the court applies the substantive laws of . . . 'the state where the last event necessary to make an actor liable for the alleged wrong takes place.'" *Id*. (quoting *Hubbard*, 515 N.E.2d at 1073). "This presumption is not conclusive, however. It may be overcome if the court is persuaded that 'the place of the tort bears little connection to this legal action.'" *Id*. (quoting *Hubbard*, 515 N.E.2d at 1074).

> If the location of the tort is insignificant to the action, the court should consider other contacts that may be more relevant, "such as: (1) the place where the conduct causing the injury occurred; (2) the residence or place of business of the parties; and (3) the place where the relationship is centered."

*Id*. (quoting *Hubbard* 515 N.E.2d at 1073-74). "These factors are not an exclusive list nor are they necessarily relevant in every case. All contacts 'should be evaluated according to their relative importance to the particular issues being litigated.'" *Id*. (quoting *Hubbard*, 515 N.E.2d at 1074).

In the instant case, it is undisputed that Fennimore prepared Morgan's 2003 tax return[3] at her office in Richmond, Indiana. Docket No. 54 at 3. Further, "[a]ll of the work to prepare *any* tax return on behalf of Morgan was performed in Indiana." *Id*. (emphasis added). "Fennimore has never had an office in Ohio" and "Morgan and Fennimore met in [Fennimore's] office located in Indiana to review the returns." *Id*. Thus, not only is Indiana the location where the last event necessary to make Fennimore liable for her alleged malpractice occurred, it is also the

---

[3] The 2003 tax return is the last return that was allegedly negligently prepared. By virtue of Morgan's 2003 assignment to Peachtree, he was no longer obligated to pay taxes on the lottery income after 2003.

5

state with the most significant contacts to the action. Accordingly, Indiana substantive law applies to the parties' dispute.[4]

The Indiana Accountancy Act (the "Act") provides that an action under the Act

> must be commenced by the earlier of the following:
> (1) One (1) year from the date the alleged act, omission, or neglect is discovered or should have been discovered by the exercise of reasonable diligence.
> (2) Three (3) years after the service for which the suit is brought has been performed or the date of the initial issuance of the accountant's report on the financial statements or other information.

IND. CODE 25-2.1-15-2. Indiana courts have consistently held that this statute clearly and unambiguously "mandates that an action for accountant malpractice must be commenced by the *earlier* of the two dates." *KPMG, Peat Marwick, LLP v. Carmel Fin. Corp., Inc.*, 784 N.E.2d 1057, 1061 (Ind. Ct. App. 2003). In the instant case, Morgan had to file any lawsuit stemming from the allegedly negligent preparation of his 2003 tax return before April 2007. Morgan did not file this lawsuit until 2009, thus, the statute of limitations ran and his case is time-barred. Indiana case law supports this conclusion.

In *Carmel Financial*,

> KMPG performed accounting services for Carmel from 1988 through and including 1996 . . . . [T]he alleged negligence was discovered by Carmel in 1997. Therefore, under the first subsection of IND. CODE 25-2.1-15-2, the statute of limitations for Carmel to bring an action against KPMG for negligence in their provision of accounting services expired in 1998. Under the second subsection, the statute of limitations terminated in 1999.

---

[4] The Court notes that Morgan's motion appears to argue that *dépeçage* applies. "*Dépeçage* is the process of analyzing different issues within the same case separately under the laws of different states." *Simon*, 805 N.E.2d at 801. Indiana does not recognize *dépeçage*. *See id.* at 801-02. Thus, to the extent that Morgan argues that his malpractice claim against Fennimore must be analyzed under both Indiana and Ohio law, he is incorrect. Only Indiana law applies to Morgan's malpractice claim.

*Carmel Financial*, 784 N.E.2d at 1061. Because the Act clearly provides that an action must be commenced by the earlier of the two dates, the plaintiff had to file suit prior to 1998. Having failed to do so, the case was time-barred.

So too in *Crowe, Chizek, & Co., LLP v. Oil Technology, Inc.*, 771 N.E.2d 1203, 1207 (Ind. Ct. App. 2002). The court concluded that the plaintiff's suit was time-barred according to the Act's statute of limitations. In *Oil Technology*, the plaintiff hired Crowe, Chizek & Company ("Crowe") to prepare its Indiana personal property tax returns. Crowe did so from 1987 until 1992. When the plaintiff learned that Crowe had failed to claim a tax deduction to which it was entitled, it filed suit in 1997. After the trial court denied Crowe's motion for summary judgment, Crowe filed an interlocutory appeal. *Id.* at 1205-06. The Court of Appeals concluded that the plaintiff's case was time-barred because "Crowe last prepared Oil Tech's personal property tax returns for the March 1, 1992 assessment, and the work was completed on September 18, 1992." *Id.* at 1207. "Oil Tech filed its cause of action against Crowe nearly five years after Crow last prepared Oil Tech's personal property tax return." *Id.* The court noted that the Act's "three-year limitation period contains no discovery rule . . . under subsection two of the Accountancy Act, the cause of action *must* be filed within three years from the date that 'service for which the suit is brought' was performed." *Id.* Because the plaintiff failed to file suit within three years of the date that Crowe's services were rendered, the suit was time-barred.

The instant case is similar to both *Carmel Financial* and *Oil Technology*. The last negligently-filed tax return was the 2003 return which was prepared and filed in April 2004. After the 2003 taxable year, Morgan no longer owed taxes on the lottery income because he assigned his remaining payments to Peachtree, which assumed liability for the relevant taxes.

7

However, like the plaintiff in *Oil Technology*, Morgan did not file suit until 2009, more than three years "after the service for which the suit [was] brought has been performed." IND. CODE 25-2.1-15-2. Although Morgan claims that he did not discover Fennimore's negligence until the summer of 2008, when he was contacted by the Ohio Department of Taxation, and thus his filing in April of 2009 was timely, the statute clearly states that any actions "must be commenced by *the earlier* of the following." IND. CODE 25-2.1-15-2 (emphasis added). Thus, under the second provision of IND. CODE 25-2.1-15-2, Morgan's suit had to be filed by the spring of 2007. His 2009 filing comes too late and his suit is time-barred unless another doctrine tolls the statute of limitations.

Not surprisingly, Morgan claims that the doctrine of continuous representation serves to toll the statute of limitations in this case.[5] This doctrine was first applied to attorneys in *Biomet, Inc. v. Barnes & Thornburg*, 791 N.E.2d 760 (Ind. Ct. App. 2003). In *Bambi's Roofing, Inc. v. Moriarity*, 859 N.E.2d 347, 358 (Ind. Ct. App. 2006), the court of appeals extended this doctrine

---

[5] Although Morgan's argument is under the doctrine of continuous representation, Fennimore briefly discusses the doctrine of continuing wrong and states that the distinction between the two doctrines is "unclear." Docket No. 54 at 4. The Court disagrees. The doctrine of continuing wrong applies "when an entire course of conduct combines to produce an injury." *Bambi's Roofing v. Moriarity*, 859 N.E.2d 347, 356 n.5 (Ind. Ct. App. 2006). In contrast, "the doctrine of continuous representation tolls the statute of limitations until the end of an attorney's [or accountant's] representation of a client in the same matter in which the alleged malpractice occurred." *Id*. (citing *Biomet, Inc. v. Barnes & Thornburg*, 791 N.E.2d 760, 765 (Ind. Ct. App. 2003)). Unlike the doctrine of continuing wrong, which "focuses on the continuing nature of the act that was immediately responsible for the injury," the continuous representation doctrine focuses on "the continuing representation of the professional in the matter which formed the basis of the alleged professional malpractice." *Id*. In short, the doctrines are not interchangeable. The only argument that Morgan raises, and indeed the only argument he could raise, in support of tolling the statute of limitations is that the doctrine of continuous representation applies. Thus, the Court will not address the doctrine of continuing wrong any further.

to CPAs. Under the doctrine of continuous representation, "'the statute of limitations does not commence until the end of an [accountant's] representation of a client in the same matter in which the alleged malpractice occurred.'" *Id*. at 357 (quoting *Biomet*, 791 N.E.2d at 765). The *Bambi's Roofing* court explained that "the continuous representation must be in connection with the specific matter directly in dispute, and not merely the continuation of a general professional relationship" and "the mere recurrence of professional services does not constitute continuous representation where the later services performed are not related to the original services." *Id.* (citing *Ackerman v. Price Waterhouse*, 683 N.Y.S.2d 179, 205 (N.Y. App. Div. 1998)). The court summarized the rule as providing "an exception to our discovery rule." *Id.* at 358. Thus, "in a situation where the accountant continues to represent the client in the same matter in which the alleged malpractice occurred, the date of the accrual begins at the termination of an accountant's representation of the client in the specific matter in which the alleged malpractice occurred." *Id.* The continuous representation rule "is necessarily limited to the accountant's representation in the same, specific matter." *Id.*

In *Bambi's Roofing*, although the court did extend the doctrine of continuous representation to CPAs, the court concluded that the doctrine was inapplicable to the plaintiff so the plaintiff's suit was time-barred. The defendant in *Bambi's Roofing* was a CPA who provided services to Bambi's from 1983 until 2003. *Bambi's Roofing*, 859 N.E.2d at 350. In late 2000, upon the defendant's recommendation, Bambi's hired Christy Grogg as its in-house accounting officer. Not only did the defendant train Grogg, but he continued to serve as the company's CPA. In March 2003, Bambi's discovered that Grogg had embezzled more than $76,900.00. Grogg was convicted and sentenced on July 7, 2003. On July 2, 2004, Bambi's filed suit against

9

Moriarty, alleging accounting negligence. *Id*. The trial court ultimately granted the defendant's motion for summary judgment, holding that the statute of limitations in Indiana's Accountancy Act barred the negligence claim. *Id.* The court reasoned that "Bambi's did not have to choose between engaging in speculative litigation and waiting to see if things might turn out all right after all." 859 N.E.2d at 359. As soon as Bambi's learned of the embezzlement, the company terminated the guilty employee and instigated criminal proceedings. "At that point, there was nothing the Accountants could have done in an ongoing professional capacity . . . to make the situation turn to Bambi's advantage. The embezzled money was lost, the harm was done, and could not be undone." *Id*. At the moment that the embezzlement was completed and the guilty employee was terminated, "the Accountants had no more opportunity to remedy their error, if any, nor could the Accountants mitigate the damage caused by their error, if any error could be established in the first place." *Id.* Accordingly, the court concluded that Bambi's claim was not tolled by the continuous representation doctrine and instead the complaint was barred by the statute of limitations.

Similarly, in the instant case, there is absolutely nothing in the record to indicate that Morgan and Fennimore had an ongoing professional relationship. Although Morgan continued to use Fennimore's services, he admitted that he was never required to use Fennimore as his CPA nor was he compelled to do so. In addition, each year that Morgan hired Fennimore to complete his tax returns was treated as a separate event and Morgan paid Fennimore for services rendered when he picked up his tax returns. Moreover, as in *Bambi's Roofing*, once Fennimore committed the alleged negligence and failed to file an Ohio state tax return on Morgan's behalf, the harm was done. There was nothing that Fennimore could do to remedy the alleged problem.

This is simply not the sort of situation to which the continuous representation doctrine applies. Therefore, because the doctrine is inapplicable, and because Morgan did not file his Complaint until more than three years after the last allegedly negligent tax return was prepared, any causes of action for accounting malpractice are time-barred. Accordingly, the Defendants' motion for summary judgment is **GRANTED** as to these claims.

In addition, Morgan's Complaint purports to bring a breach of fiduciary duty claim against Fennimore. In their motion for summary judgment the Defendants assert that this claim is essentially a repackaging of Morgan's accounting malpractice claim and therefore is also time-barred. *See* Docket No. 39 at 5-6. Morgan does not dispute this conclusion in his combined response and cross-motion for summary judgment. Accordingly, the Defendants' motion for summary judgment is also **GRANTED** as to the breach of fiduciary duty claim.

## CONCLUSION

For the foregoing reasons, the Defendants' Motion for Summary Judgment (Docket No. 38) is **GRANTED**. The Plaintiff's Motion for Summary Judgment (Docket No. 43) is **DENIED**.

IT IS SO ORDERED.

Date: 12/03/2010

*[Signature]*
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Michael E. Brown
Kightlinger & Gray
mbrown@k-glaw.com

Robert Eugene Feagley II
Lee Cossell Kuehn & Love LLP
bfeagley@nleelaw.com

Nathaniel Lee
Lee Cossell Kuehn & Love LLP
nlee@nleelaw.com

Tara Y. Melton
Lee Cossell Kuehn & Love LLP
tmelton@nleelaw.com